## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 14 2016, 9:23 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Craig Persinger
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Lee Roby,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

April 14, 2016

Court of Appeals Case No.
27A02-1507-CR-954

Appeal from the Grant Superior Court

The Honorable Dana J. Kenworthy, Judge

Trial Court Cause No.
27D02-1502-F5-12

**Mathias, Judge.**

[1] James Roby ("Roby") was convicted in Grant Superior Court of Level 5 felony dealing in cocaine and of being a habitual offender. Roby was ordered to serve

an aggregate twelve-year sentence in the Department of Correction. Roby appeals and argues that the State failed to present sufficient chain of custody of the cocaine evidence.

We affirm.

## Facts and Procedural History

On October 24, 2014, Grant County Sheriff's Department Detective Wesley McCorkle ("Detective McCorkle") was working as an undercover officer for the Grant County Joint Effort Against Narcotics ("JEAN") team. Detective McCorkle was sent to a residence located on South Branson Street in Marion, Indiana, to conduct a controlled buy from Chanell Smith ("Smith"). While Detective McCorkle was at Smith's residence, Roby walked in and kissed her. Smith then set up a purchase for $60 of crack cocaine on behalf of Detective McCorkle, and McCorkle paid Smith an additional $20 for arranging the deal. Shortly after Smith made the phone call, a red Chevrolet pulled up in front of her residence. Smith retrieved the package from the individual in the car and handed it to Detective McCorkle.

Detective McCorkle returned to Smith's residence to conduct another controlled buy on November 5, 2014.[1] However, this time Smith was unable to obtain the drugs from her source for Detective McCorkle. Roby, who was again

---

[1] Detective McCorkle wore a recording device under his clothes during this encounter.

present at Smith's residence, called an individual he identified as "Cuzo" and confirmed that he could obtain cocaine from him. Detective McCorkle then drove Roby and Smith to a nearby residence and handed Roby $80 that had been photocopied by JEAN team officers. Roby exited the vehicle, and Smith instructed Detective McCorkle to drive around the block. A few minutes later, Roby returned to the car and handed Detective McCorkle a clear, twisted, plastic bag containing an off-white rock-like substance. Roby told Detective McCorkle that he had already taken his $20 out.[2] Tr. p. 65.

[5] After taking Smith and Roby back to Smith's residence, Detective McCorkle immediately took the clear, plastic bag containing the white substance to the JEAN task force office and conducted a field test. The test concluded that the substance was a presumptive positive for cocaine. He then wrote his initials where he sealed the bag and placed the clear bag into an evidence bag after he completed the identifying information located on the front. Detective McCorkle then placed the evidence bag into the locked and secured evidence room. Evidence technician, Al Culley ("Culley") was then responsible for ensuring that the evidence was transported to the Indiana State Police ("ISP") lab.

[6] Several days later, the evidence bag was sent via certified mail to the ISP lab where forensic scientist, Nicole Kay ("Kay") tested the substance approximately one month later. Kay explained that when evidence arrives at

---

[2] Detective McCorkle took this statement to mean that Roby smoked $20 worth of the crack cocaine in exchange for facilitating the buy.

the lab, a unique barcode is generated and placed on the bag.[3] Then, an evidence technician places the evidence into a secured vault until an analyst has time to conduct testing. She also noted that the lab has a backlog and it sometimes takes awhile to complete testing. When Kay received the evidence, the bag was completely sealed. Like Detective McCorkle's field test, Kay's tests concluded that the substance in the clear bag contained a cocaine base.[4]

[7] The State charged Roby with Level 5 felony dealing in cocaine on February 4, 2015, and that same day filed a notice of intent to seek a habitual offender adjudication. A jury trial was held on June 2 and 3, 2015. At trial, Roby objected to the admission of State's Exhibit 1, 2, and 5, which includes the substance Detective McCorkle obtained from the controlled buy, along with the corresponding field test report of the substance, and the ISP lab's certificate of analysis of the substance.

[8] Roby argued that the State could not establish a sufficient chain of custody because Grant County Sheriff's Department evidence technician Culley was not available to testify to clear up the discrepancies regarding why he mailed the evidence instead of transporting it himself. The trial court gave Roby's counsel and the State an opportunity to speak with Culley over the phone and after doing so both parties agreed to continue the trial. The court then determined

---

[3] The ISP lab received the evidence on November 17, 2014.

[4] Kay conducted fourier transform infrared spectroscopy (FTIR) and ultraviolet spectroscopy tests on the substance. Tr. p. 103.

that the State established a sufficient foundation for the cocaine evidence regarding chain of custody and noted that any gaps would go to weight rather than admissibility.

[9] The jury subsequently found Roby guilty of Level 5 felony dealing in cocaine and of being a habitual offender. The trial court then entered judgment of conviction. At a sentencing hearing on June 29, 2015, the trial court ordered Roby to serve six years for the Level 5 felony conviction, enhanced by six years for being a habitual offender in the Department of Correction. Roby now appeals.

## Discussion and Decision

[10] The trial court has discretion in matters regarding the admission and exclusion of evidence, and we review the court's decision only for an abuse of that discretion. *Wells v. State*, 904 N.E.2d 265, 269 (Ind. Ct. App. 2009), *trans. denied*. The trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id.*

[11] Roby argues that the State failed to establish a sufficient chain of custody for the cocaine evidence. To establish a proper chain of custody, the State must give reasonable assurances that the evidence at issue remained in an undisturbed condition. *Troxell v. State*, 778 N.E.2d 811, 814 (Ind. 2002). The State bears a higher burden to establish the chain of custody of fungible evidence whose appearance is indistinguishable to the naked eye. *Id.* However, the State need

not establish a perfect chain of custody, and once the State strongly suggests the exact whereabouts of the evidence, any gaps in the chain of custody go to the weight of the evidence, not its admissibility. *Id.*

[12] Moreover, there is a presumption of regularity in the handling of evidence by officers, and there is a presumption that officers exercise due care in handling their duties. *Id.* To mount a successful challenge to the chain of custody, one must present evidence that does more than raise a mere possibility that the evidence may have been tampered with. *Id.*

[13] In the present case, Roby argues a gap is in the chain of custody because the evidence was transported to the ISP lab via certified mail instead of being delivered by evidence technician Culley, which is the typical procedure. Detective McCorkle testified that after obtaining the clear, plastic bag from Roby, he immediately conducted a field test on the substance at the JEAN office, sealed the bag marked with his initials, and placed it in the secured and locked evidence room. The evidence was then sent via certified mail to the ISP lab, where it was received on November 17, 2014, and stored in a secure location until an analyst was ready to conduct testing.

[14] ISP forensic scientist, Kay testified that when she received the evidence, the bag was sealed. No evidence was presented at trial suggesting that the alleged cocaine evidence was opened or otherwise tampered with before it reached the ISP lab. Further, both Detective McCorkle's initial field test report and Kay's certificate of analysis indicate that the substance contained a cocaine base.

Roby has done nothing more than raise a mere possibility of someone tampering with the evidence when it was sent via certified mail, and therefore he has not rebutted the presumption of officer due care. For all of these reasons, we cannot conclude that the trial court abused its discretion when it admitted the evidence.

[15] The State established a sufficient chain of custody of the alleged cocaine evidence, and the trial court did not err when it admitted the evidence identifying the substance Detective McCorkle purchased from Roby as cocaine.

[16] Affirmed.

Vaidik, C.J., and Barnes, J., concur.